USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 6/11/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

OFFICE SOLUTION GROUP, LLC,

Plaintiff,

-against-

NATIONAL FIRE INSURANCE COMPANY OF HARTFORD,

Defendant.

1:20-cv-4736-GHW

MEMORANDUM OPINION & ORDER

GREGORY H. WOODS, United States District Judge:

Plaintiff Office Solution Group, LLC ("Office Solution Group") and Defendant National Fire Insurance Company of Hartford ("National Fire Insurance") entered into an insurance agreement (the "Policy") in June of 2019. Plaintiff specializes in office project management and furniture installation. It conducts the majority of its business at its office in Midtown Manhattan. Defendant agrees to indemnify Plaintiff against specified losses at its office under the "Business Property Coverage" and "Civil Authority Coverage" provisions of the Policy. The Business Property Coverage includes "direct physical loss of or damage to property" and coverage is further extended for losses caused by the action of civil authority. The Policy explicitly excludes coverage for certain specified losses, including those caused by microbes, which it defines to include viruses (the "Microbe Exclusion").

In March of 2020, due to the rapid spread of the COVID-19 virus and the subsequent executive orders issued by New York Governor Andrew Cuomo mandating that non-essential businesses suspend the presence of their in-person employees (the "Executive Orders"), Plaintiff shut the doors of its Midtown office space. As the pandemic persisted and both the threat of the virus and the Executive Orders remained in place, Plaintiff suffered substantial losses from the loss

of use of its office space and ultimately laid off thirty-five employees. Plaintiff sought coverage for its losses, which Defendant denied.

Defendant moves to dismiss the complaint, arguing that the terms of the Business Property Coverage only apply to losses caused by physical damage, and not to loss of use. Defendant also argues that the terms of the Civil Authority Coverage only apply when access to covered property is prohibited, and the Executive Orders were issued in response to direct physical loss or damage located away from the insured's premises. Finally, Defendant argues that the Microbe Exclusion bars coverage for damage caused by the COVID-19 virus. In response to Defendant's arguments, Plaintiff argues that the loss of use of its office space is considered a physical loss, that the Executive Orders unambiguously prohibit access to the office space and nearby properties, and that the Microbe Exclusion is ambiguous and does not apply. Because the Court concludes that the language of the Policy unambiguously does not cover Plaintiff's losses, Defendant's motion to dismiss is GRANTED.

## I. BACKGROUND

### A. Facts

#### 1. The Insurance Policy

On June 27, 2019, Plaintiff and Defendant entered into an insurance agreement, the terms of which are the subject of this dispute. Dkt. No. 36-1, Decl. of Yahonnes Cleary ("Cleary Decl.") Ex. A (the "Policy"); Dkt. No. 28, Am. Compl. ("AC"), ¶ 11. Plaintiff purchased the Policy from Defendant for the period of June 27, 2019 through June 27, 2020. AC ¶ 10. In accordance with the Policy, Plaintiff agreed to pay Defendant policy premiums in exchange for indemnification for certain losses at its office at 28 West 36th Street, New York, New York 10018. *Id.* ¶ 11.

Plaintiff alleges that the Policy is an all-risk policy, providing coverage for all perils unless explicitly excluded or limited in the Policy. *See id.* ¶ 16. Plaintiff asserts that the Policy includes

"property, business personal property, business income and extra expense, contamination coverage, and additional coverages." *Id.* ¶ 13. The Business Property Coverage provisions require "direct physical loss of or damage to" the covered property to trigger coverage:

> Personal Property Coverage
> The Insurer will pay for direct physical loss of or damage to personal property at a location directly caused by a covered peril.
> The most the Insurer will pay for any one occurrence for such loss or damage is the applicable Personal Property Coverage Limit of Insurance shown in the Business Property Schedule of Locations at that location . . . .
> Business Income Coverage
> The Insurer will pay for the actual loss of business income the Named Insured sustains during the period of restoration due to the necessary suspension or delay of operations caused by direct physical loss of or damage to property at a location directly caused by a covered peril . . . .
> Extra Expense Coverage
> The Insurer will pay extra expense caused by direct physical loss of or damage to property at a location directly caused by a covered peril.

Policy at 75 (emphasis omitted).[1] "Extra expense" is defined as

> actual reasonable and necessary operating expenses the Named Insured incurs during the period of restoration that would not have been necessary to incur if there had been no direct physical loss of or damage to property, provided such expenses are incurred:
> A. to avoid or minimize the suspension or delay of operations and to continue such operations which have been affected by the direct physical loss or damage to the property; or
> B. in an attempt to minimize the period of restoration.

*Id.* at 37 (emphasis omitted).

The Policy includes Civil Authority Coverage, which provides coverage for lost business income and extra expense for closures caused when civil authorities prohibit access to the covered property:

[1] Citations to the Policy refer to the page numbers automatically generated by the Court's ECF system.

> For up to the number of days shown on the Business Property Schedule of Coverages and Limits, the Insurer will pay, as provided, for:
>
> i. The actual loss of business income the Named Insured sustains during the period of restoration due to the necessary suspension or delay of operations;
> ii. the actual loss of research and development business income the Named Insured sustains during the period of restoration due to the necessary suspension or delay of the research and development projects; and
> iii. extra expense,
>
> caused by action of civil authority that prohibits access to the location or reported unspecified location. Such action must result from a civil authority's response to direct physical loss of or damage to property located away from a location or reported unspecified location. That lost or damaged property must be within five miles of that location or reported unspecified location which sustains a business income or research and development business income loss or where extra expense is incurred. The loss or damage must be directly caused by a covered peril.

*Id.* at 82-83 (emphasis omitted). The Policy does not define the terms "direct," "physical," "loss," or "damage."

The Policy also includes an exclusion for "Fungi, Wet Rot, Dry Rot and Microb[e]" (the "Microbe Exclusion") and defines "microbe" to include "any . . . virus," though the term "virus" is not further defined; nor does the policy specifically mention coverage in the event of a pandemic:

> The Insurer will not pay for loss or damage caused directly or indirectly by or resulting from the presence, growth, proliferation, spread or any activity of fungi, wet or dry rot, or microbes. However, this exclusion does not apply when fungi, wet or dry rot, or microbes results from fire or lightning.

*Id.* at 96 (emphasis omitted).

> Microbes means any:
> A. non-fungal microorganism;
> B. non-fungal, colony-form organism;
> C. virus; or
> D. bacteria.
>
> Microbe includes any spores, mycotoxins, odors, or any other substances, products, or byproducts produced by, released by, or arising out of the current or past presence of microbes.

*Id.* at 40 (emphasis omitted).

### 2. Plaintiff Shuts its Doors in the Wake of COVID-19

In March of 2020, the COVID-19 virus spread rapidly across New York. The COVID-19 virus is particularly dangerous because it can spread rapidly among even asymptomatic carriers and persist in aerosols for hours and on surfaces for up to 28 days. AC ¶¶ 37, 40-41. By March 11, 2020, the World Health Organization (WHO) declared that the rapid spread of the COVID-19 virus was a pandemic. *Id.* ¶ 39.

To mitigate the unfolding crisis, on March 7, 2020, New York Governor Andrew Cuomo declared a disaster emergency across New York State. *Id.* ¶ 46; Dkt. No. 36-2, Cleary Decl. Ex. B, at 2. On March 12, 2020, Governor Cuomo issued an executive order canceling "[a]ny large gathering or event for which attendance is anticipated to be in excess of five hundred people" and mandating that "[a]ny place of business or public accommodation, and any gathering or event for which attendance is anticipated to be fewer than five hundred people" operate at no more than fifty percent occupancy. Dkt. No. 36-3, Cleary Decl. Ex. C, at 5. On March 20, 2020, the State of New York issued a stay-at-home order, and Governor Cuomo ordered businesses to "reduce the in-person workforce at any work locations by 100%" and "utilize, to the maximum extent possible, any telecommuting or work from home procedures that they can safely utilize." Dkt. No. 36-4, Cleary Decl. Ex. D, at 3; AC ¶¶ 48-49.

On March 16, 2020, Plaintiff closed the doors of its office to its customers and ceased its business operations. AC ¶ 55. Prior to the pandemic, Plaintiff's primary source of revenue derived from face-to-face customer interactions at its office space which housed six project managers, a large team of project coordinators, and fifteen field supervisors. *Id.* ¶ 63. As a result of the unexpected and lengthy closure of its office, Plaintiff incurred immense business income losses, which ultimately forced Plaintiff to lay off thirty-five employees. *Id.* ¶ 56.

Pursuant to the Policy, Plaintiff seeks coverage from Defendant for the business income losses incurred by the loss of use of its facility under the Business Income Coverage terms of the Policy. *Id.* ¶ 74. Plaintiff additionally seeks coverage under the Civil Authority Coverage terms for the business income losses incurred by the loss of use of its facility due to the Executive Orders which mandated that Plaintiff close its physical storefront to the public. *Id.*

**B. Procedural History**

Plaintiff initiated this case on June 22, 2020, and amended its complaint on November 23, 2020. Dkt. No. 5; AC at 18. Plaintiff brings a single claim for declaratory relief affirming that the losses it incurred during the COVID-19 pandemic are covered under the Policy:

> 72. Plaintiff seeks a Declaratory Judgement to determine whether the Orders constitute a prohibition of access to Plaintiff's office as Civil Authority as defined in the Policy.
> 73. Plaintiff further seeks a Declaratory Judgement to affirm that the Orders trigger coverage.
> 74. Plaintiff further seeks a Declaratory Judgment to affirm that the Policy provides coverage to Plaintiff for any current and future Civil Authority closures due to physical loss or damage from the Coronavirus and the policy provides business income coverage in the event that Coronavirus has caused a loss or damage at the Insured Property.[2]

AC ¶¶ 72-74. On January 12, 2021, Defendant subsequently moved to dismiss the complaint for Plaintiff's failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Dkt. No. 34, Mot. to Dismiss Pl.'s Am. Compl. ("Mot."). Plaintiff opposed Defendant's motion on February 9, 2021. Dkt. No. 37, Mem. in Opp'n to Def.'s Mot. to Dismiss ("Opp'n"). Defendant replied on March 2, 2021. Dkt. No. 38, Def.'s Reply Br. Further Supp. Mot. to Dismiss ("Reply").

[2] As Defendant notes in its reply brief, although Plaintiff seeks declaratory relief for business income coverage, Plaintiff did not elect Business Income Coverage for the location at issue (Reply at 2); the Policy shows that only Personal Property Coverage and Extra Expense Coverage were purchased for that location. Policy at 71. Nonetheless, Defendant's motion focuses in part on interpreting the Business Income Coverage provisions of the Business Property Coverage terms.

## II. LEGAL STANDARD

### A. Rule 12(b)(6)

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, a defendant may move to dismiss a plaintiff's claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion to dismiss under Rule 12(b)(6), the Court accepts as true all well-pleaded factual allegations and draws all inferences in the plaintiff's favor. *See Palin v. N.Y. Times Co.*, 940 F.3d 804, 809-10 (2d Cir. 2019) (quoting *Elias v. Rolling Stone LLC*, 872 F.3d 97, 104 (2d Cir. 2017)); *Chase Grp. All. LLC v. City of New York Dep't of Fin.*, 620 F.3d 146, 150 (2d Cir. 2010). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In addition to the well-pleaded facts in the Amended Complaint, the Court has also considered the Policy, Dkt. No. 36-1, and the Executive Orders, Dkt. Nos. 36-2-36-4. Generally, "[courts] do not look beyond 'facts stated on the face of the complaint, documents appended to the complaint or incorporated in the complaint by reference, and matters of which judicial notice may be taken.'" *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (ellipses and citation omitted).

A document is incorporated by reference if "[the party's] action or defense" is based upon it, and "the complaint . . . make[s] a clear, definite and substantial reference" to it. *Lynch v. City of New York*, 952 F.3d 67, 79 (2d Cir. 2020) (citations omitted); *BankUnited, N.A. v. Merritt Env't Consulting Corp.*, 360 F. Supp. 3d 172, 183 (S.D.N.Y. 2018) (quotation omitted). A court can also consider documents that are "integral to" the complaint, provided that the complaint relies heavily upon its terms and effects. *Goel*, 820 F.3d at 559. Here, Plaintiff's claim hinges entirely on the terms of the insurance policy and the Executive Orders, which are written instruments as they are "legal document[s] that define[ ] rights, duties, entitlements, or liabilities[.]" *Lynch*, 952 F.3d at 79. Plaintiff

makes numerous clear, definite, and substantial references to the language of the Policy and the Executive Orders throughout its complaint. Accordingly, the Policy and the Executive Orders may properly be considered by the Court at the pleading stage as they are both incorporated by reference and integral to the complaint.

Separately, when considering a motion made pursuant to Rule 12(b)(6), the Court may take judicial notice of "documents retrieved from official government websites," *see Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 166 (S.D.N.Y. 2015), or other "relevant matters of public record," *see Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012); *see also* Fed. R. Evid. 201(b) (permitting judicial notice of facts "not subject to reasonable dispute"). Accordingly, the Court can properly take judicial notice of the Executive Orders in considering Defendant's motion as they are accessible on the State of New York's website. However, as the Court will explain below, its consideration of the Executive Orders is irrelevant because the unambiguous text of the Policy alone does not cover the losses suffered by Plaintiff.

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

"To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). Although Rule 8 "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting

*Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

**B. Interpretation of Insurance Contracts Under New York Law**

"Under New York law, insurance policies are interpreted according to general rules of contract interpretation." *Olin Corp. v. Am. Home Assur. Co.*, 704 F.3d 89, 98 (2d Cir. 2012). Accordingly, "an insurance contract is interpreted to give effect to the intent of the parties as expressed in the clear language of the contract." *Parks Real Estate Purchasing Grp. v. St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 42 (2d Cir. 2006). The "words and phrases [in a contract] should be given their plain meaning, and the contract should be construed so as to give full meaning and effect to all of its provisions." *LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.,* 424 F.3d 195, 206 (2d Cir. 2005) (internal quotation marks and ellipsis omitted). "An ambiguity exists where the terms of an insurance contract could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Morgan Stanley Grp. Inc. v. New England Ins. Co.*, 225 F.3d 270, 275 (2d Cir. 2000). However, "[l]anguage whose meaning is otherwise plain does not become ambiguous merely because the parties urge different interpretations in the litigation." *Hunt, Ltd. v. Lifschultz Fast Freight, Inc.*, 889 F.2d 1274, 1277 (2d Cir. 1989).

"If a court concludes a provision in an insurance contract is ambiguous, it may consider extrinsic evidence to ascertain the parties' intent at the formation of the contract." *Olin*, 704 F.3d at 99 (citation omitted). "If the extrinsic evidence fails to establish the parties' intent, courts may apply

other rules of contract interpretation, including New York's rule of *contra proferentem,* according to which ambiguity should be resolved in favor of the insured." *Id.* (citation omitted).

Plaintiffs characterize the Policy as an "all-risk policy," providing coverage for all perils unless explicitly excluded or limited. AC ¶ 16. "All-risk policies . . . cover all risks except those that are specifically excluded." *City of Burlington v. Indem. Ins. Co. of N. Am.*, 332 F.3d 38, 47 (2d Cir. 2003). "It is well established under New York law that a policyholder bears the burden of showing that the insurance contract covers the loss." *Morgan Stanley*, 225 F.3d at 276. Indeed, "labeling the policy as 'all-risk' does not relieve the insured of its initial burden of demonstrating a covered loss under the terms of the policy." *Roundabout Theatre Co. v. Cont'l Cas. Co.*, 751 N.Y.S.2d 4, 6 (App. Div. 2002).

## III. DISCUSSION

Plaintiff alleges that it is entitled to coverage for the losses it suffered during the pandemic because it suffered physical loss or damage from the novel coronavirus, and the Microbe Exclusion does not apply. Defendant argues that the plain text of the Policy requires that Plaintiff is not entitled to coverage and therefore, Plaintiff's amended complaint must be dismissed. For the reasons that follow, Defendant's motion is granted.

### A. The Applicable Provisions Unambiguously Require "Physical Loss of or Damage" to Property for Coverage

Defendant's first basis for dismissal is that Plaintiff fails to state a claim under the Business Property Coverage provisions. Dkt. No. 35, Mem. in Supp. of Def.'s Mot. to Dismiss ("Def.'s Mem.") at 11. Each of the applicable provisions in the Policy only applies when the covered property is physically damaged or altered and does not apply to the loss of use Plaintiff suffered. Thus, Plaintiff's request for declaratory relief that "the policy provides business income coverage in the event that Coronavirus has caused a loss or damage at the Insured Property" runs contrary to the clear and unambiguous terms of the Business Property Coverage. AC ¶ 74. The Business Property Coverage grants coverage for losses resulting from "direct physical loss of or damage to"

the covered property. Policy at 75. Accordingly, the question is whether the insured premises experienced direct physical loss or damage.

Plaintiff argues against the plain meaning of the phrase, instead insisting that the high risk of the COVID-19 virus created a direct physical loss to the covered property by forcing Plaintiff to close its doors to the public. AC ¶ 32. Despite the fact that its office suffered no physical injury, Plaintiff argues that its loss of use of the office can be characterized as a "physical loss," as its inability to use its office as it had before the pandemic "rendered the property substantially unusable and uninhabitable." *Id.* ¶ 58. However, New York courts have consistently held that the term "direct physical loss or damage" "unambiguously, requires some form of actual, physical damage to the insured premises to trigger loss of business income and extra expense coverage." *Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co.*, 17 F. Supp. 3d 323, 331 (S.D.N.Y. 2014) (finding that loss of use of covered property during a planned power outage in the face of Hurricane Sandy did not constitute "direct physical loss or damage"); *see Roundabout Theatre*, 751 N.Y.S.2d at 8 (finding that the plaintiff was not entitled to coverage where the loss of use of its theatre was not caused by any direct physical damage, and the policy language "clearly and unambiguously provide[d] coverage only where the insured's property suffer[ed] direct physical damage"); *Visconti Bus Serv., LLC v. Utica Nat'l Ins. Grp.*, 142 N.Y.S.3d 903, 913 (N.Y. Sup. Ct. 2021) ("[C]ourts have declined to interpret [direct physical loss or damage] to include 'loss of use' of the property under New York law.").

Critically, Plaintiff's argument also fails to consider the extensive case law that has developed in New York on this exact issue over the past year, which provides that loss of use caused by the COVID-19 pandemic is not physical damage. Unfortunately, Plaintiff is only one of numerous businesses that suffered immense income loss after shutting its doors during the pandemic. Many of those other businesses have brought materially identical actions in New York seeking business impact coverage from their insurance providers. New York courts have consistently maintained that

"direct physical loss of or damage" language requires physical damage to invoke coverage, and that loss of use due to the pandemic does not constitute physical damage when the covered property was physically unharmed by the virus. *See, e.g.*, *Sharde Harvey, DDS, PLLC v. Sentinel Ins. Co., Ltd.*, No. 20-CV-3350 (PGG) (RWL), 2021 WL 1034259 (S.D.N.Y. Mar. 18, 2021) (finding that the plaintiff's loss of use of its dental practice during the pandemic closures did not constitute a direct and physical loss, so Plaintiff could not access coverage under the business income coverage clause); *Food for Thought Caterers Corp. v. Sentinel Ins. Co., Ltd.*, No. 20-CV-3418 (JGK), 2021 WL 860345 (S.D.N.Y. Mar. 6, 2021) (finding that the plaintiff's loss of use of its catering premises during the pandemic closures did not constitute a direct and physical loss, so Plaintiff was not entitled to coverage); *Michael Cetta, Inc. v. Admiral Indem. Co.*, No. 20 CIV. 4612 (JPC), 2020 WL 7321405 (S.D.N.Y. Dec. 11, 2020), *appeal withdrawn*, No. 21-57, 2021 WL 1408305 (2d Cir. Mar. 23, 2021) (rejecting the plaintiff's argument that the loss of use of its restaurant during the pandemic constituted sufficient physical loss or damage to invoke coverage); *10012 Holdings, Inc. v. Sentinel Ins. Co., Ltd.*, No. 20 CIV. 4471 (LGS), 2020 WL 7360252 (S.D.N.Y. Dec. 15, 2020) (finding that the plaintiff's loss of use of its art gallery and dealership during the pandemic closures did not constitute a direct and physical loss, so the plaintiff was not entitled to coverage); *Visconti*, 142 N.Y.S.3d at 915 (finding that the plaintiff's loss of use of its busing service premises during the pandemic closures did not constitute a direct and physical loss, so Plaintiff could not access coverage under the business income coverage clause) ("The words 'direct' and 'physical' . . . require a showing of actual, demonstrable physical harm of some form to the insured premises — the forced closure of the premises for reasons exogenous to the premises themselves is insufficient to trigger coverage.").

As in the many analogous cases that have been brought in New York courts over the past year, the Court concludes here that the plain meaning of "direct physical loss or damage" unambiguously requires physical damage to the covered property to invoke coverage and that loss of

usage does not rise to the level of physical damage. Plaintiff has failed to allege such loss or damage occurred, given that Plaintiff's office remained physically intact and unharmed throughout its closure, other than having its doors closed to the public. Accordingly, Plaintiff is not entitled to coverage under the Business Property Coverage terms of the Policy.

**B. The Civil Authority Coverage Unambiguously Requires "Prohibited Access" and "Physical Damage" to Neighboring Properties**

Nor can Plaintiff recover under the Civil Authority Coverage, which only applies when the insured is prohibited from accessing the covered property due to physical damage to neighboring properties. Here too, Plaintiff's position is inconsistent with both the plain terms of the Policy and with the vast majority of recent case law pertaining to identical issues.

The Civil Authority Coverage terms of the Policy apply where "the suspension or delay of operations occurs" and provide that Defendant will indemnify Plaintiff for losses "caused by action of civil authority that prohibit[ ] access[.]" Policy at 83. The provision expressly states that "[s]uch action must result from a civil authority's response to direct physical loss of or damage to property located away" from the location and caused by a "covered peril." *Id.* Defendant argues that the language of the Policy imposes two requirements: that the civil authority action (1) prohibit access to the property, (2) as a result of direct physical damage to neighboring properties. Def.'s Mem. at 19. In turn, Plaintiff argues that the threat of COVID-19 at neighboring properties constitutes sufficient physical damage, and that the Executive Orders unambiguously prohibited access for the Civil Authority Coverage to apply. Opp'n at 16-19.

Under the clear language of the Policy, in order to be entitled to coverage under the Civil Authority Coverage, Plaintiff must show that Governor Cuomo's orders were issued in response to direct physical loss or damage to neighboring properties. Policy at 82. Here, Plaintiff does not argue that its neighboring properties faced physical damage or loss aside from the potential, speculative infection of the COVID-19 virus, let alone that the Executive Orders were a result of

the infection of those properties. As explained above, the loss of use is not sufficient to trigger coverage for physical loss or damage. By failing to plead that neighboring properties suffered any physical loss, Plaintiff has failed to meet its burden to show it is entitled to Civil Authority Coverage under the Policy. This conclusion too, is consistent with the other decisions in this District regarding this issue. *See, e.g., Michael Cetta*, 2020 WL 7321405 (denying the plaintiff coverage under civil authority coverage terms where the plaintiff failed to allege any specific damage to any neighboring properties); *Michael J. Redenburg, Esq. PC v. Midvale Indem. Co.*, No. 20 CIV. 5818 (PAE), 2021 WL 276655, at *7 (S.D.N.Y. Jan. 27, 2021) (granting the defendant's motion to dismiss where the plaintiff failed to allege damage to neighboring property); *Food for Thought*, 2021 WL 860345, at *6 (holding that the civil order "would need to be a direct result of a Covered Cause of Loss to property in the immediate area of [the insured] premises" to trigger civil authority coverage) (quotations omitted).

Furthermore, in materially identical cases that New York courts evaluated over the course of the past year, the courts have uniformly held that the Executive Orders issued by Governor Cuomo were issued in response to the rapid spread of the COVID-19 virus, and not on account of any physical loss or damage to any specific property. *See, e.g.*, *Sharde Harvey*, 2021 WL 1034259, at *14 (finding that the "orders were the result of the COVID-19 pandemic and . . . the COVID-19 pandemic do[es] not constitute a direct physical loss to property"); *10012 Holdings, Ltd.*, 2020 WL 7360252, at *4 (concluding that "Plaintiff was forced to close for the same reason as its neighbors -- the risk of harm to individuals on its own premises due to the pandemic. Put differently, the Complaint does not plausibly allege that the potential presence of COVID-19 in neighboring properties directly resulted in the closure of Plaintiff's properties"); *Visconti*, 142 N.Y.S.3d at 917 (determining that that the COVID-19 Executive Orders closed neighboring properties "to limit the risk of spreading the Covid-19 virus. This simply does not implicate Civil Authority coverage.").

The Executive Orders at issue here are the same as those at issue in the cited cases. The Court declines to reinterpret the Executive Orders and maintains that they were not the result of any physical damage to specific properties, and so Civil Authority Coverage does not apply.

In addition, Plaintiff has failed to plead that the Executive Orders prohibited access to its office. Policy at 82. The plain language of the Executive Orders limited the presence of in-person employees at the location, but notably did not prohibit access to the premises outright. There is no prohibition that prevents employers from accessing the property for any variety of reasons, such as sorting mail or collecting personal items. Here too, the Court declines to reinterpret the Executive Orders, and instead follows the clear and consistent trend of other New York courts in finding that the Executive Orders did not prohibit access to Plaintiff's property. *See, e.g., Sharde Harvey*, 2021 WL 1034259, at *13 ("[f]ollowing the plain reading of the Civil Authority provision, New York courts have consistently found that the same government shutdown orders at issue here did not 'prohibit' access to premises that would otherwise trigger coverage."); *Food for Thought*, 2021 WL 860345, at *6 ("Food for Thought's allegation that the civil authority orders prohibited access to its 'property for its intended purpose' is not enough to trigger the Civil Authority coverage provision . . . [B]ecause no civil authority order denied complete access to the plaintiff's premises, the Amended Complaint fails to allege that access was specifically prohibited.") (quotations omitted); *Michael Cetta*, 2020 WL 7321405, at *12 ("[Plaintiff] has not alleged that access was ever denied completely to the restaurant [and] . . . under the plain meaning of the Policy, if employees (but not patrons) were allowed access to the indoor portions of the restaurant, civil authority did not prohibit access."). Thus, because no civil authority order denied complete access to the plaintiff's premises, Plaintiff is not entitled to coverage.

### C. The Microbe Exclusion Unambiguously Applies to "Viruses" Including the COVID-19 Virus, Barring Plaintiff from Coverage

As Plaintiff has failed to allege that it is entitled to coverage on the face of the Policy, the Court is not required to determine whether the Microbe Exclusion applies. Nonetheless, the Court has considered Plaintiff's arguments and concludes that the Microbe Exclusion unambiguously excludes coverage for damage caused by the COVID-19 virus. Plaintiff argues that the Microbe Exclusion was intended only to apply to "wood/structure damage," and that the COVID-19 virus does not apply because the Microbe Exclusion does not use the word "pandemic." Opp'n at 19-21. No such limitation exists in the plain language of the Policy. The exclusion for damages caused directly or indirectly by "any virus" clearly encompasses the COVID-19 virus even in the absence of the specific term "pandemic." Accordingly, the Microbe Exclusion applies and Plaintiff is not entitled to coverage under the terms of the Policy.

The Policy language provides that "[t]he Insurer will not pay for loss or damage caused directly or indirectly by or resulting from the presence, growth, proliferation, spread or any activity of fungi, wet or dry rot, or microbes. However, this exclusion does not apply when fungi, wet or dry rot, or microbes results from fire or lightning." Policy at 96. The Policy expressly defines "microbes" to include "any . . . virus." *Id.* at 40. Therefore, substituting "microbes" with the provided definition, the language reads "the Insurer will not pay for loss caused directly or indirectly by or resulting from the presence, growth, proliferation, spread or any activity of fungi, wet or dry rot, or [virus(es)]."

First, Plaintiff does not allege that COVID-19 is not a virus, nor could it. Second, the Microbe Exclusion's causation language is instructive here. Losses "caused *directly or indirectly*" by the virus are expressly within the scope of the exclusion. Plaintiff asserts that "*[d]ue to COVID-19*, Plaintiff has suffered 'direct physical loss of or damage' to its property. Among other things, *COVID-19* made the Insured Property unusable in the way that it had been used before COVID-19,

rendered the property substantially unusable and uninhabitable, intruded upon the property, damaged the property, prevented physical access to and use of the property, and caused a suspension of business operations at the property." AC ¶ 58 (emphasis added); *see also id.* ¶ 64 ("This loss is 'direct.' Plaintiff is not asking Defendant to reimburse it after someone obtained a judgment against Plaintiff for getting them sick. That might be an indirect loss."). Clearly then, it is evident on the face of the Amended Complaint that Plaintiff's losses are excluded from coverage under the Policy. The same is true for any asserted losses caused indirectly by COVID-19, as those are still ultimately attributable to the virus and excluded by the plain text of the Policy. *See id.* ¶ 33 ("Plaintiff's losses were also caused by the entry of Civil Authority Orders, particularly those by Governor Cuomo, New York State, and the New York State Department of Health, to mitigate the spread of COVID-19."). Accordingly, Plaintiff's losses "caused directly or indirectly by or resulting from the presence" or "spread" of COVID-19 are unambiguously excluded from coverage under the Policy.

Plaintiff's arguments are unpersuasive, but the Court will address each in turn. Plaintiff asserts that read as a whole, the Policy clearly shows that the Microbe Exclusion does not apply because it was only "meant to cover any risks related to the wood and/or structure of the property." Opp'n at 20. Plaintiff does not identify any language limiting the exclusion in that way, nor address the effect of the Policy's explicit inclusion of "virus" in the definition of "microbe." Instead, Plaintiff infers that the limitation exists—and that the drafters' intent is evident—because the Microbe Exclusions refers to "wet or dry rot" or "fungi". *Id.* However, because the Microbe Exclusion is not ambiguous, the Court may not look beyond the four corners of the Policy to interpret the Microbe Exclusion's meaning. *See U.S. ex rel. AWL Indus., Inc. v. Site Remediation Servs. Corp.*, 92 F. Supp. 2d 132, 135 (E.D.N.Y. 2000). Plaintiff does not point to any other language within those four corners that would indicate that it could reasonably conclude that the exclusion

only applies to wood or structural damage. Plaintiff's assumption that this exclusion only applies to wood and structural damage is just that—an assumption. Accordingly, the Court rejects Plaintiff's interpretation that the exclusion only applies to wood and structure-related damage.

Plaintiff further argues that the Policy does not expressly mention a pandemic, and so "microbe" is too ambiguous to include viruses that cause global pandemics. Opp'n at 21. The Court disagrees. The Policy expressly defines "microbe" as "*any* . . . virus." Policy at 40 (emphasis added). The language is clear and unambiguous; a reasonable person would understand that, under the plain meaning of "any," that definition encompasses all viruses regardless of whether the virus causes infections on a global scale or causes no infections at all. *See 100 Orchard Street, LLC v. Travelers Indemnity Insurance Co. of Am.*, No. 20-CV-8452 (JMF), 2021 WL 2333244, at *2 (rejecting the plaintiff's argument that a virus exclusion clause did not apply to losses caused by a "national state of disaster like the current pandemic" and explaining that "'the COVID-19 pandemic is simply a large-scale outbreak of a virus.'" (quoting *Michael J. Redenburg*, 2021 WL 276655, at *8 n.5)). That the word "pandemic" is absent is irrelevant when the word "any" is used, indicating that viruses of all varieties are included. The express language of the Policy indicates that the COVID-19 virus is included under "microbe" as "any . . . virus," barring Plaintiff from coverage. There is no language indicating that the COVID-19 virus would be an exception to that principle, regardless of whether or not a pandemic ensued. Indeed, "the fact that [an insurer] could have used *even more* specific language does not [necessarily] render ambiguous the language that [it] actually used[.]" *100 Orchard Street*, 2021 WL 2333244, at *2 (citation omitted) (emphasis in original).

The Microbe Exclusion unambiguously bars Plaintiff from coverage for damage caused directly or indirectly by "any virus," which plainly includes the COVID-19 virus. Had Plaintiff successfully argued that it suffered some direct and physical loss as a result of either the virus or the

Executive Orders under the Business Property Coverage and Civil Authority Coverage of the Policy, it still would be barred from seeking coverage due to the Microbe Exclusion.

## IV. AMENDMENT

In this Circuit, "[i]t is the usual practice upon granting a motion to dismiss to allow leave to replead." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). However, "[r]easons for a proper denial of leave to amend include undue delay, bad faith, futility of amendment, and perhaps most important, the resulting prejudice to the opposing party." *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 725 (2d Cir. 2010) (citation omitted). The Court declines to grant Plaintiff leave to amend its Amended Complaint *sua sponte* because Plaintiff has previously filed an amended complaint and has not asked for the opportunity to file a second amended complaint, nor has Plaintiff suggested that it is in possession of facts that would cure the problems with its claims. *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) ("[a] plaintiff need not be given leave to amend if it fails to specify either to the district court or to the court of appeals how amendment would cure the pleading deficiencies in its complaint."); *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (holding that where the "problem with [a complaint] is substantive [and] better pleading will not cure it," leave to amend should be denied as futile).

## V. CONCLUSION

The language of the Policy is unambiguous and bars Plaintiff from coverage. The Business Property Coverage terms of the Policy cover direct physical damage or loss, and the Civil Authority Coverage terms of the Policy cover losses when civil authorities prohibit entrance onto the covered property due to direct physical damage to neighboring properties. Plaintiff has failed to allege that either of those occurred, and instead only alleges loss of use and limited access to the covered

property due to the threat of COVID-19. Furthermore, Plaintiff is not entitled to coverage because the Policy's Microbe Exclusion explicitly excludes coverage for damages caused by "any virus," which includes the COVID-19 virus. For those reasons, Defendant's motion to dismiss the amended complaint is GRANTED.

The Clerk of Court is directed to terminate Dkt. No. 34, enter judgment for Defendant, and close this case.

SO ORDERED.

Dated: June 11, 2021
New York, New York

GREGORY H. WOODS
United States District Judge